TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00454-CR






Robert Lee Elliott, a/k/a Robert Lee Elliott, III, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BEXAR COUNTY, 226TH JUDICIAL DISTRICT


NO. 96-CR-0987, HONORABLE SID L. HARLE, JUDGE PRESIDING







A jury found appellant Robert Lee Elliott guilty of capital murder. Tex. Penal
Code Ann. § 19.03(a)(2), (7) (West 1994). After hearing evidence at the punishment stage, the
jury found that there were sufficient mitigating circumstances to warrant a sentence of life
imprisonment. Tex. Code Crim. Proc. Ann. art. 37.071, § 2(e) (West Supp. 1998). The district
court sentenced appellant accordingly. Id. art. 37.071, § 2(g). We will affirm the district court's
judgment.

Appellant first contends the evidence is factually insufficient to sustain the
conviction. When conducting a factual sufficiency review, the evidence is not viewed in the light
most favorable to the verdict. Instead, all the evidence is considered equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836
S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). A verdict will be set aside for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Clewis v. State 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State,
823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed).

The bodies of Lee Carroll and Jeffery Pylant were found in the Carroll family home
in Live Oak on the afternoon of January 10, 1996. Both young men had been shot in the head by
.38 caliber hydroshock bullets. Lee Carroll's Ford Probe automobile was missing.

Joseph Britt, appellant's friend and classmate at Southwest Texas State University
in San Marcos, testified that he drove appellant to the Carroll house on the morning of January
10, 1996. There, appellant got out and instructed Britt to meet him in a few minutes at a nearby
grocery store. About twenty minutes later, appellant drove into the store's parking lot in a Ford
Probe. Britt and appellant then returned to San Marcos.

Later that day, police found Carroll's Ford Probe parked in a university parking
lot in San Marcos. Inside the car, police found a gun case containing three pistols: a .38 caliber
semi-automatic, a 9 mm semi-automatic, and a .357 revolver. Appellant's fingerprints were found
on the car and on the .38 caliber pistol. Ballistics tests showed that the fatal shots were fired from
this pistol. The gun case and the other two pistols were identified as belonging to Lee Carroll's
father. Hydroshock ammunition of the type used in the murders was found in appellant's
apartment, as were several gold chains taken from the Carroll house. Blood matching Pylant's
blood type was found on appellant's shoe.

When first questioned by the police, appellant gave a statement denying any
knowledge of or involvement in the murders. When the investigating officer told appellant that
he had been seen driving Carroll's automobile and that the officer did not believe appellant's story,
appellant responded, "I shot them both." Appellant then gave a second written statement. In this
statement, appellant said that he went to Carroll's house to collect money he was owed. When
Carroll told appellant he did not have the money and did not know when he would, appellant
became angry and shot him. He then shot Pylant, who was in the same room. After taking the
gold chains and the two pistols, appellant left in Carroll's car.

In his own testimony, appellant acknowledged going to the Carroll house on the
morning of the murders, where he met Carroll, Pylant, and a third person he knew only as Little
Jay. According to appellant, Carroll owed Little Jay money. When Carroll said he could not pay,
Little Jay shot Carroll, and then Pylant, with the .38 caliber pistol appellant had previously sold
to him. After shooting Carroll and Pylant, Little Jay ordered appellant to take the gold chains
from Carroll's room and to drive Carroll's automobile to San Marcos. Appellant said that he
complied with these orders because he was in fear for his life. He testified that he did not mention
Little Jay in his statements to the police because he was afraid of what Little Jay might do to his
family.

Appellant urges that the evidence is factually insufficient because his exculpatory
testimony was not contradicted by any physical evidence. In particular, appellant points out that
there was no evidence of blood spatters on his clothing or of gunpowder residue on his hands. 
This argument ignores all of the evidence the State did introduce, including appellant's possession
of the murder weapon and his written confession. If ever a case merited the phrase
"overwhelming evidence of guilt," it is this one.

Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust
result. We must maintain appropriate deference to the jury's verdict by finding error only when
the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. 
Clewis, 922 S.W.2d at 135; Reina v. State, 940 S.W.2d 770, 773 (Tex. App.--Austin 1997, pet.
ref'd). Considering all the evidence before us, we have no difficulty concluding that the jury's
verdict is not clearly wrong or unjust. Point of error one is overruled.

In his remaining point of error, appellant contends the district court erred by
admitting evidence of an extraneous offense. See Tex. R. Evid. 404(b). The testimony in
question was that of Van Fonda Nixon. Nixon testified that appellant told her in the summer of
1995 that he carried a weapon with him "while he cruised over on Southwest Military."

Appellant did not object to Nixon's testimony on the ground he now advances and
therefore failed to preserve error. See Tex. R. App. P. 33.1(a). Moreover, he did not object at
all to similar testimony from other witnesses. Joseph Murphy testified that he once saw appellant
carrying the pistol in his belt under his shirt. Joseph Britt testified that he twice saw appellant
carrying the pistol in the small of his back. San Marcos police officer Ron Trampus Gooding
testified that in November 1995 he investigated a reported disturbance involving a weapon at a San
Marcos apartment complex. Appellant was present at the scene of the disturbance and had a
loaded .38 caliber semi-automatic magazine in his coat pocket. Appellant first told Gooding that
the pistol to which this magazine belonged was in San Antonio, but later took the officer to the
place where he had hidden it. In light of this testimony, and given the volume of evidence of
appellant's guilt, any error in the admission of Nixon's testimony was clearly harmless. See Tex.
R. App. P. 44.2(b). Point of error two is overruled.

The judgment of conviction is affirmed.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 11, 1998

Do Not Publish



fficer did not believe appellant's story,
appellant responded, "I shot them both." Appellant then gave a second written statement. In this
statement, appellant said that he went to Carroll's house to collect money he was owed. When
Carroll told appellant he did not have the money and did not know when he would, appellant
became angry and shot him. He then shot Pylant, who was in the same room. After taking the
gold chains and the